UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS H. HUNZEKER, <br><br> Plaintiff, <br><br> v. <br><br> GREG BUTLER, in his official and individual capacities; ANITA PANKO, in her official and individual capacities; and the CITY OF MONTPELIER, an Idaho political subdivision, <br><br> Defendants. | Case No. 4:12-cv-00421-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Compel (Dkt. 18). For the reasons

explained below, the Court will grant the motion.

## BACKGROUND

In his Complaint, Plaintiff Dennis Hunzeker asserts claims for false arrest,

malicious prosecution, and failure to supervise. With regard to defendant Anita Panko, he

alleges that she and defendant Greg Butler harassed, coerced and intimidated his wife and

other witnesses into asserting domestic violence charges against him. Panko is the

Victims Assistant Unit Coordinator for the City of Montpelier.

On May 24, 2013, Plaintiff's counsel deposed Panko. During the deposition, Panko refused to answer questions about her prior marriages. *Panko Depo.,* pp. 24-26, Dkt. 18-6. Plaintiff's counsel indicated that he was entitled to the information and told Panko she could discuss it with her attorney. *Id.* Panko's counsel responded that he would not force Panko to answer the questions unless opposing counsel could show its relevance. *Id.* Panko's counsel then stated that Plaintiff's counsel would need to take it up with the Court. *Id.*

Counsel recessed the deposition and attempted to resolve the issue, but to no avail. The parties then contacted the Court's staff in an attempt to informally mediate the issue, but Panko's counsel essentially informed the Court that resolving the issue in mediation was unlikely because Panko would not answer the questions without a court order. Panko did not, however, file a motion under Rule 30(d)(3) suggesting that the deposition be terminated or limited. The matter is now before the Court pursuant to Plaintiff's Motion to Compel.

## LEGAL STANDARD

The Court may order the "discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b) (1). Relevant evidence is any evidence tending to make the existence of any consequential fact "more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. Although viewed in light of Rule 401, "the question of relevancy is to be more loosely construed at the discovery stage than at the trial . . . ." See 8 Wright, Miller, and Marcus, Federal Practice

& Procedure, § 2008 at p. 125 (2010). That the evidence might be inadmissible does not preclude discovery so long as the request "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ.P. 26(b)(1).  However, whether the Court orders information discoverable is subject to the balancing test of Rule 26(b)(2)(C), which requires courts to weigh the probative value of proposed discovery against its potential burden.

Federal Rule of Civil Procedure 30 sets forth the process for conducting depositions by oral examination. A party may depose the opposing party in a lawsuit without leave of the Court, except in circumstances not relevant here. Fed. R. Civ. P. 30(a)(1). During the deposition, counsel for the deponent may object to a question, but "the examination still proceeds; the testimony is taken subject to any objection. . . . A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

Rule 30(d)(3) states that during the deposition, a party or deponent may move to terminate or limit the deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). It also states that the Court may order that the deposition be terminated or limit its scope as provided in Rule 26(c).

## ANALYSIS

**ORDER - 3**

Although it's not absolutely clear what types of questions Plaintiff's counsel intends to ask Panko about her previous marriages, the Court understands that they involve asking the names of her previous husbands, and inquiring into whether they were abusive relationships. Whether Panko was abused by a previous spouse is not directly relevant to the claims in this case – whether defendants violated Plaintiff's rights by falsely arresting and prosecuting him for domestic violence. However, in his Complaint, Plaintiff asserts that Butler and Panko harassed his wife to the point that she filed false charges against him. The Complaint states that "Butler and Panko's (sic) on five occasions forced Plaintiff's wife to come to meet with them, and even though she continually told them to stop pressing the charges, they continued to press for Plaintiff's prosecution." *Complaint,* ¶ 31, Dkt. 1. He further alleges that "[e]ven though there was no legal reason to prohibit Plaintiff from being with his wife, Defendants Butler and Panko continued to attempt to keep Plaintiff and his wife from being together." *Id.* at ¶ 30. Plaintiff also alleges that defendants Butler and Panko "falsified their official reports and exerted pressure on the prosecuting attorney to attempt to secure a conviction." *Id.* at ¶ 44(b).

Panko argues that she should not be required to answer questions about her previous marriages because she was subjected to abuse in those relationships, and that requiring her to disclose the circumstances of them will open up emotional wounds. *Def's Response Brief,* pp. 4-5, Dkt. 19; *Panko Aff.,* ¶ 10, Dkt. 19-2. She also worries that discussing her prior marital history will unnecessarily inflame her ex-husband and upset

ORDER - 4

her children. *Id.* Panko further asserts that she moved to the small town of Montpelier

because she did not want individuals in her community to know her past. She suggests

that because Plaintiff attends church with her, he will likely disclose anything he learns at

her deposition to others in church and the community. *Def's Response Brief,* p. 5, Dkt.

19; *Panko Aff.,* ¶ 11, Dkt. 19-2. In turn, Panko suggests that her ability to do her job as

the Victims Assistant Unit Coordinator would be compromised if her past was disclosed

during the deposition. *Def's Response Brief,* pp. 5-6, Dkt. 19.

   The Court understands and sympathizes with Panko's reservations about

discussing any past abuse. However, given the allegations in this case, the Court finds

that such information may be relevant, or at least appears reasonably calculated to lead to

the discovery of admissible evidence. For example, based upon the allegation that Panko

pressured Plaintiff's wife to press charges against Plaintiff, and that Panko falsified her

reports, Plaintiff should be allowed to discover whether Panko pressed false claims

against her previous husbands. Moreover, Plaintiff may discover or want to argue that

Panko's own history of domestic abuse caused her to pressure Plaintiff's wife to press

false charges against him. Therefore, such information could be relevant and admissible

to prove Plaintiff's claims for false arrest and malicious prosecution. Accordingly, the

Court will order Panko to sit for another deposition and answer questions about her past

marriages.

   The line of questioning about her past marriages should be limited in scope,

however. The Court will not attempt to list the specific questions which may be asked,

ORDER - 5

but counsel should understand that they must, as the rules require, appear "reasonably

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Examples of proper questions include whether Panko was married, the names of her

former spouses, whether she pressed charges against her former spouses for domestic

violence and the outcome of those charges if any, and whether her marital experiences

affected her dealings with Plaintiff's wife. Counsel are encouraged to work together to

agree on a line of questions that will comply with the Court's order.

    With regard to Plaintiff's request for sanctions, Rule 30(d)(3)(C) states that Rule

37(a)(5) applies to the award of expenses in this situation. Rule 37(a)(5) states that "the

court must, after giving an opportunity to be heard, require the party or deponent whose

conduct necessitated the motion, the party or attorney advising that conduct, or both to

pay the movant's reasonable expenses incurred in making the motion, including

attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court need not award fees if (1) the

movant filed the motion before attempting in good faith to obtain the discovery without

court action, (2) the nondisclosure was substantially justified, or (3) other circumstances

make an award of expenses unjust.

    Here, none of the exceptions apply, and the Court "must" order payment of

expenses to Plaintiff. As noted above, during the deposition, counsel for a party or

deponent may object to a question, but "the examination still proceeds; the testimony is

taken subject to any objection. . . . A person may instruct a deponent not to answer only

when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to

present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). No privilege was

asserted and there was no attempt to enforce a court ordered limitation in this instance.

Moreover, Panko did not file a motion under Rule 30(d)(3). Instead, Panko refused to

answer opposing counsel's questions, and her counsel simply stated that he would not

force her to do so. The rules do not allow for this.

Plaintiff then attempted to mediate the issue through the Court's informal process,

but Panko's attorney essentially reiterated that Panko would not answer the questions.

Accordingly sanctions are appropriate, and the Court will order Panko and her attorney

pay Plaintiffs costs and fees associated with the motion to compel, including counsel's

time spent informally trying to mediate the issue and the cost of the transcript and

recorder travel fees.[1]

Finally, based upon a comment by Panko's counsel at the informal mediation with

the Court's staff, the Court understands that Panko may choose not to answer the

questions related to her previous marriages even if ordered by the Court. The Court

cautions Panko that refusal to follow the Court's order may lead to contempt of court or

further sanctions. Of course, it would also be appropriate for the parties to agree upon a

---

[1] Rule 37(a)(5)(A) gives the Court discretion to sanction either the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both. Based upon the deposition transcript before the Court, it appears that Panko refused to answer the questions, and that her attorney simply refused to force her to answer them as opposed to advising her not to do so. However, the Court is not privy to what transpired during the break in the deposition, and whether or to what extent Panko and her attorney discussed the matter. Moreover, the Court cannot and will not invade the attorney/client relationship to find out what happened. Accordingly, the best approach here is to order both Panko and her attorney pay the sanction, but let them discuss among themselves whether they want to divide them differently.

ORDER - 7

stipulated protective order to limit disclosure of the information revealed in Panko's

deposition.

**ORDER**

**IT IS ORDERED:**

1.      Plaintiff's Motion to Compel (Dkt. 18) is **GRANTED** as explained above.

DATED: August 5, 2013

B. Lynn Winmill
Chief Judge
United States District Court

**ORDER - 8**