UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS H. HUNZEKER,<br><br>Plaintiff,<br><br>v.<br><br>GREG BUTLER, in his official and individual capacities; ANITA PANKO, in her official and individual capacities; and the CITY OF MONTPELIER, an Idaho political subdivision,<br><br>Defendants. | Case No. 4:12-cv-00421-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is a motion for summary judgment filed by Defendants Greg Butler, Anita Panko, and the City of Montpelier, an Idaho political subdivision. *See* Dkt. 25. Defendants have also moved to strike the affidavits of Rosa Susana Hunzeker and Adam Whitmore. *See* Dkt. 34. For the reasons explained below, the Court will: (1) grant in part and deny in part the Defendants' motion for summary judgment; (2) grant in part and deny in part Defendants'

motion to strike the affidavit of Adam Whitmore; and (3) deny Defendants' motion to strike the affidavit of Rosa Susana Hunzeker.

## BACKGROUND

The following facts are undisputed or, when disputed, taken in the light most favorable to Dennis Hunzeker, the plaintiff and non-moving party. See *Matsushita Elec. Indus. Co. v, Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating the district court's obligation to construe the record in the light most favorable to the non-moving party).

In June 2010, Rosa Hunzeker called the Montpelier Police Department after she and her husband, Dennis Hunzeker, got into an argument. *Rosa Hunzeker Aff.*, ¶ 8 (Dkt. 31). During the argument, Mrs. Hunzeker kicked Mr. Hunzeker in the testicles and tried to hit him. Mr. Hunzeker then restrained Mrs. Hunzeker. *Id*. When the 911 operator answered, Mrs. Hunzeker hung up because she only speaks Spanish, and does not speak English. *Rosa Hunzeker Aff.*, ¶ 8 (Dkt. 31). A Spanish-speaking operator called back; however, Mrs. Hunzeker declined to speak with him. *Id*. This particular incident occurred in the presence of Mrs. Hunzeker's son, Aaron Rivera. *Panko Aff.*, ¶ 7 (Dkt. 19-2).

In August 2010, Greg Butler, Chief of Police for the Montpelier Police Department, asked Anita Panko, the Victims Assistant Unit Coordinator for the

Montpelier Police Department, to contact Mrs. Hunzeker to inquire about the circumstances surrounding her June 2010 altercation with her husband. *Panko Aff.*, ¶ 7 (Dkt. 19-2).

Ms. Panko, along with an interpreter, met with Mrs. Hunzeker on August 13, 2010. *Id.*; *Hall Aff.*, Ex. B, p. 4 (Dkt. 19-3). At this meeting, Mrs. Hunzeker stated that she was never afraid that Mr. Hunzeker would hurt her physically; rather she was afraid he would divorce her and take custody of their daughter. *Rosa Hunzeker Aff.*, ¶¶ 12-15 (Dkt. 31). Mrs. Hunzeker further stated the only reason she met with Ms. Panko was so she could contact a divorce attorney. *Id.* at ¶ 21.

On August 20, 2010, Mrs. Hunzeker contacted Cynthia Johnson, the interpreter, to get in touch with Ms. Panko to obtain information on a divorce attorney. *Rosa Hunzeker Aff.*, ¶¶ 22-23 (Dkt. 31). Ms. Johnson told Mrs. Hunzeker to go to the hospital where Chief Butler would escort her to the police station. *Id.* at ¶ 24. While at the police station, Ms. Panko stated that a protection order was necessary to protect Mrs. Hunzeker from her husband. *Rosa Hunzeker Aff.*, ¶¶ 26 (Dkt. 31). However, the protection order was not granted. The Judge determined that because the argument took place in June and Mrs. Hunzeker continued to live in the home, she was not in any immediate danger. *Hall Aff.*, Ex. C, p. 7 (Dkt. 19-3).

While Mrs. Hunzeker and Ms. Panko were at the courthouse, Chief Butler and Officer Adam Whitmore served Mr. Hunzeker with a citation for domestic violence in the presence of a child. *Hall Aff.*, Ex. C, p. 7 (Dkt. 19-3); *Whitmore Aff.*, ¶ 7 (Dkt. 29). Mr. Hunzeker was arrested, and was not released from jail until August 23, 2010. *Dennis Hunzeker Aff.*, ¶ 12 (Dkt. 30).

Shortly after Mr. Hunzeker's release from jail, Ms. Panko informed Mrs. Hunzeker that she needed to distance herself from her husband. *Rosa Hunzeker Aff.*, ¶ 32 (Dkt. 31). Further, Ms. Panko warned Mrs. Hunzeker that if she and Mr. Hunzeker were in a certain distance of one another, the police would arrest Mr. Hunzeker. *Id*. On the night of Mr. Hunzeker's release, Ms. Panko, along with three police officers, took Mrs. Hunzeker and her belongs and moved her into an apartment in Montpelier. *Id*. at ¶ 33; *Dennis Hunzeker Aff.*, ¶ 15 (Dkt. 30).

Mrs. Hunzeker continued to live apart from her husband for approximately six months, until March 2011. *Rosa Hunzeker Aff.*, ¶ 35 (Dkt. 31). During this time, Mr. and Mrs. Hunzeker spoke in private, and visited each other at night to avoid the consequences Ms. Panko threatened. *Id*.; *Dennis Hunzeker Aff.*, ¶ 17 (Dkt. 30). During her separation from her husband, Mrs. Hunzeker said she felt suffocated by Ms. Panko and Ms. Johnson. *Id*. at ¶ 36. Mrs. Hunzeker moved back into her home on or about March 25, 2011. *Dennis Hunzeker Aff.*, ¶ 18 (Dkt. 30).

# MOTION FOR SUMMARY JUDGMENT

## I. STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is

not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## II. ANALYSIS

Hunzeker asserts five causes of action in this case: (1) interference with marital privacy; (2) wrongful arrest under 42 U.S.C. § 1983; (3) malicious prosecution under 42 U.S.C. § 1983; (4) failure to train and supervise employees, triggering 42 U.S.C. § 1983 liability; and (5) proximate cause of damages to his ranching operations. The Court will discuss each in turn.

### A. Interference With Marital Privacy

Hunzeker alleges that Defendants, through their actions, interfered with his marital "zone of privacy" and affected his ability to make decisions regarding his family unit. The Supreme Court addressed the 'zone of marital privacy' in *Griswold v. Connecticut*. 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). There, the Court determined that a law forbidding the use of contraceptives violates the privacy surrounding the marital relationship, stating "'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" *Griswold*, 381 U.S. at 485 (quoting *NAACP v. Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325).

However, the Court is unaware of any precedent holding, or even intimating, that the marital zone of privacy be free from a law enforcement investigation of a

criminal act, as Hunzeker suggests. Therefore, summary judgment as to this claim will be granted.

### B. Wrongful Arrest

Hunzeker alleges he was wrongfully arrested in violation of 42 U.S.C. § 1983. To establish a prima facie case under § 1983, plaintiffs must prove two elements: (1) that the conduct occurred under color of law; and (2) that the conduct deprived them of a right, privilege or immunity under the United States Constitution or federal law. *Orozco v. County of Yolo*, 814 F.Supp. 885, 890 (E.D. Cal. 1993). It is undisputed that the Defendants acted under color of state law. To prove the second element, Hunzeker must show that the Defendants' conduct violated his Fourth Amendment right to be free from unreasonable searches and seizures.

Arrests made without a warrant are unreasonable, and if conducted without probable cause, violate the Fourth Amendment. *Law v. City of Post Falls*, 772 F.Supp.2d 1283, 1290-91 (D. Idaho 2011) (citing *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966)). However, probable cause is a defense to claims of wrongful arrest. *Id*. at 1291. "Defendants are entitled to qualified immunity for the arrest if a reasonable officer could have believed probable cause existed to make the arrest." *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993).

In a § 1983 action, the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). However, if no reasonable jury could determine probable cause to arrest existed, a directed verdict is proper. *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (citing *Kennedy v. Los Angeles Police Dept.*, 887 F.2d 920, 923 (9th Cir. 1989)).

In this case, there is a genuine issue of fact as to the behavior of Hunzeker at the time of his arrest. *Whitmore Aff.*, at ¶ 10, 13 (Hunzeker did not exhibit any signs of physical aggression or attempt to resist arrest); *Butler Dep.*, 91:19-95:7 (Hunzeker became very angry and aggressive). Because there is a factual dispute as to the behavior of Hunzeker during this time, the Court is unable to determine the reasonableness of the arrest. Whether Chief Butler had probable cause to arrest Hunzeker is a determination for the jury. Therefore, summary judgment as to this claim will be denied.

### C. Malicious Prosecution

Hunzeker alleges malicious prosecution under 42 U.S.C. § 1983 claiming, specifically, that there was a lack of prosecutorial independence. To prevail on a § 1983 claim of malicious prosecution, Hunzeker "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for

the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). The Ninth Circuit has adopted a rebuttable-presumption-based approach when analyzing a § 1983 claim of malicious prosecution. *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008). It is presumed that a prosecutor exercises independent judgment in deciding to file criminal charges, thereby breaking the "chain of causation between an arrest and prosecution" and immunizing the investigating officers from liability for injuries suffered after the charging decision. *Id*. (quoting *Smiddy v. Varney,* 665 F.2d 261, 266–67 (9th Cir. 1981)). This presumption may be rebutted if the plaintiff shows that the independence of the prosecutor's judgment has been compromised. *Id*. Circumstances in which the presumption of independent judgment will be considered rebutted include situations in which the prosecutor "relied on the police investigation and arrest report when he filed the complaint, instead of making an independent judgment on the existence of probable cause for arrest." *Smiddy I,* 665 F.2d at 267.

However, a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. *Newman v. County of Orange,* 457 F.3d 991, 994–95 (9th Cir.2006).Therefore, to survive summary judgment, a plaintiff must present information that provides ample evidence from

which a reasonable jury could conclude that the arresting officers, through false statements and material omissions in their reports, prevented the prosecutor from exercising independent judgment. *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991). "Such evidence must be substantial." *Harper v. City of L.A.*, 533 F.3d 1010, 1027 (9th Cir. 2008). Once the plaintiff has introduced evidence to rebut the presumption, the burden remains on the defendant to prove that the prosecutor's judgment was independent. *Beck*, 527 F.3d at 863.

The charges brought against Hunzeker resulted from a charging decision made by Mr. McKenzie, Montpelier City Prosecutor. *McKenzie Dep.*, 41:24-42:1-7 (Dkt. 25-5). Pursuant to *Smiddy*, this creates a rebuttable presumption that Mr. McKenzie made the charging decision independently. Hunzeker, however, relies solely on his account of what happened to rebut the reports made by Ms. Panko. This, without more, is not enough to overcome the presumption of prosecutorial independence. *Newman,* 457 F.3d at 994–95. Because Hunzeker has presented no additional information to rebut the presumption of prosecutorial independence, Defendants are entitled to qualified immunity. Therefore, summary judgment as to this claim must be granted.

      **D.**      **Failure To Train and Supervise**

Hunzeker alleges failure to train and supervise under 42 U.S.C. § 1983 claiming, additionally, that Chief Butler and Ms. Panko had final policy making authority to subject Montpelier to § 1983 liability. Generally, a municipality will only be subject to § 1983 liability for failing to train its employees where that failure evidences a "deliberate indifference" to the rights of the inhabitants, and such shortcoming can be properly thought of as a city "policy or custom." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d. 412 (1989). "'[D]eliberate indifference'" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S.Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown.*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). A showing of simple or even heightened negligence will not suffice. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown.*, 520 U.S. at 407. A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 131 S.Ct. at 1360. Additionally, to rise to the level of "deliberate indifference," policymakers must continue to adhere to an approach that they know or should know has failed to prevent tortious conduct. *Id*.

In this case, Hunzeker has failed to set forth any policies or patterns causing constitutional violations rising to the level of deliberate indifference. Hunzeker states only that Chief Butler and Ms. Panko, "through their wrongful acts" established municipal liability under § 1983, but fails to set forth any specific policy or pattern of conduct that could satisfy deliberate indifference. Because Hunzeker has failed to put forth any genuine issues of fact, summary judgment as to this claim is granted.

Alternatively, municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion).Whether an official has final policymaking authority is a question of state law. *Id*. "As with other questions of state law relevant to the application of federal law, the identification of the those officials whose decisions represent the official policy of local government is a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Independent School Dist*., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). In making this determination, the Court must consider state and local law, and the "'custom or usage' having the force of law." *Id*. (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

However, before the Court can determine whether an official has final policy making authority, there must be a showing of connection between the "policy" and the "inadequate training." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Proof of an incident of unconstitutional activity is not sufficient to impose liability, "unless proof of the incident includes proof that is was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Id.* at 823-42. Thus, in order for Hunzeker to establish a connection between a policy and inadequate training, he must show that there was a course of action consciously chosen from among various alternatives. *Id.* at 823. This is a hard task because "it is difficult to accept that someone pursues a "policy" of "inadequate training," unless evidence can be adduced which proves that the inadequacies resulted from conscious choice – that is proof that the policymakers deliberately chose a training program which would prove inadequate." *Id*.

Here, as stated above, Hunzeker has failed to establish any specific policy which could be connected with inadequate training. Hunzeker makes no showing that there was ever a conscious choice, made by either Chief Butler or Ms. Panko, over various alternatives to establish a connection for inadequate training. An allegation of "wrongful acts," without more, is not enough to establish a municipal

policy. Thus, Hunzeker has not met his burden to establish an existing municipal policy that can be attributed to Chief Butler or Ms. Panko. Therefore, summary judgment as to this claim will be granted.

E. **Proximate Cause of Damages**

Hunzeker alleges that Defendants' actions, as a result of being preoccupied with legal issues, were the proximate cause of damages to his ranching operations. There are two components to proximate cause: actual cause and true proximate cause. *Newberry v. Martens*, 127 P.3d 187, 191 (Idaho 2005). Actual cause is the factual question of whether a particular event produced a particular consequence. *Id*. (citing *Sisters of the Holy Cross*, 895 P.2d 1229, 1232-33 (Idaho Ct. App. 1995)). True proximate cause focuses on legal policy, and determines whether liability for that conduct attaches. *Id*. Generally, the question of proximate cause is "one of fact to be submitted to the jury and not a question of law for the court; if upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable [people] differing, the question is for the jury." *Cramer v. Slater*, 204 P.3d 508, 515 (1daho 2009) (quoting *Alegria v. Payonk*, 619 P.2d 135, 137-38 (Idaho 1980)). The Court finds that Hunzeker has failed to establish any genuine issue of material fact that certain damages are proximately caused in this action.

As to the alleged damages to Hunzeker's ranching operation, the Court cannot determine how "Defendants' actions," without more, satisfy actual cause. Hunzeker cites "Defendants' actions" as proximate cause, but fails to point to any particular event or action by Defendants that could have caused harm to his ranching operation. *Pls. Mem. in Resp. of Mot. for Summ. J.* at 16 (Dkt. 27). This, without more, does not satisfy the factual question of whether a particular event caused a specific consequence. Because Hunzeker has failed to tie this allegation to a particular claim, he has not stated a cause of action. Therefore, summary judgment as to this claim is granted.

### III. CONCLUSION

Viewing the facts and reasonable inferences drawn therefrom in the light most favorable to Hunzeker, there exist material issues of fact regarding the alleged wrongful arrest. For this reason, this issue must be decided by a jury, and summary judgment as to this claim is dismissed. With regard to the remaining allegations of interference of marital privacy, malicious prosecution, failure to train and supervise, and proximate cause of damages, summary judgment is granted.

### MOTION TO STRIKE

Defendants filed a Motion to Strike, arguing that portions of Adam Whitmore's affidavit constituted expert testimony, when he is not a designated

expert witness in this case. The Court will grant in part, and deny in part the Defendants' Motion to Strike with regard to the affidavit of Adam Whitmore.

The Court will not strike paragraphs 12 and 15 of the affidavit of Adam Whitmore because the statements contained therein represent personal opinions, based upon what Officer Whitmore was watching at the time, and not expert testimony within the scope of F.R.E. 702.

The Court will strike paragraph 14 of the affidavit of Adam Whitmore because it constitutes expert testimony. There, the statements made by Officer Whitmore reflect his opinion based upon "experience and training as a police officer." *Whitmore Aff.*, ¶ 14 (Dkt. 29). As such, these opinions reflect expert testimony. Because Officer Whitmore was not designated as an expert witness, these statements were improper.

Additionally, Defendants seek to strike the affidavit of Rosa Hunzeker, claiming that it lacks authentication and that it contradicts prior sworn testimony. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. International Game Technology*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). This sham affidavit rule prevents "a party who has been examined at length on deposition"

from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Kennedy*, 952 F.2d at 266). However, the sham affidavit rule "'should be applied with caution'" because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. *Van Asdale*, 577 F.3d at 988 (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993)).

There are two important limitations on a district court's discretion to invoke the sham affidavit rule. *Kennedy*, 952 F.2d at 266-67. First, the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony," rather, "the district court must make a factual determination that the contradiction was really a 'sham.'" *Id*. Second, the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. *Id*. at 267. Thus, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Van

*Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

Due to the significant language barriers affecting the parties, and the inconclusive facts surrounding this case, the Court is not willing to make a determination that Mrs. Hunzeker's affidavit constitutes a sham affidavit. These are factual determinations which are best saved for trial. Accordingly, Defendants' Motion to Strike Mrs. Hunzeker's affidavit is denied.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** as explained above.

2. Defendants' Motion to Strike the affidavit of Adam Whitmore is **GRANTED IN PART AND DENIED IN PART** as explained above.

3. Defendants' Motion to Strike the affidavit of Rosa Susana Hunzeker is **DENIED**.



DATED: June 4, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court